# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 2:10-cr-29 |
| | ) | Civil Action No. 14-cv-1006 |
| ANDREW TERRY | ) | |
| | ) | Judge Mark R. Hornak |
| | ) | |
| | ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

Now before the Court is Petitioner Andrew Terry's *pro se*[1] Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.  ECF No. 127.  Upon consideration of the Motion and its Memorandum in Support, ECF No. 128, the United States's Response, ECF No. 140, Petitioner's Reply, ECF No. 145, the entire record, the applicable law, and for the reasons set forth below, the Motion will be denied without a hearing[2] and no certificate of appealability will issue.

## I.    BACKGROUND

Petitioner Andrew Terry ("Mr. Terry" or "Petitioner") was arrested by Pittsburgh police officers on March 11, 2009, and later charged federally with Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  Just before midnight that

---

[1] After Mr. Terry filed his *pro se* Motion on July 28, 2014, he filed a Motion to Appoint Counsel, ECF No. 129, which this Court granted, making a Criminal Justice Act appointment on August 14, 2014, ECF No. 130.  After several extensions of time, counsel filed a Notice on November 5, 2014, stating that after review of "prior counsel's trial and appeal files, the pleadings, the transcripts of suppression, jury trial and sentencing proceedings, the docket entries and correspondence in Petitioner's files . . . and following legal research . . . it has been determined that counsel will not file any amendments to existing pleadings or any further motions."  ECF No. 137, at ¶ 3.  The Notice further stated that Mr. Terry wished to proceed "based upon his *pro se* Motion to Vacate and his supporting Memorandum of Law."  *Id.* at ¶ 4. Counsel has filed supplemental materials at Mr. Terry's request.  ECF No. 145.

[2] District courts may dismiss § 2255 motions without holding an evidentiary hearing when it is clear from the motion and the record that the movant is not entitled to relief.  *See* 28 U.S.C. § 2255(b); Rule 4 of the Rules Governing § 2255 Proceedings.  As explained more fully in this opinion, Mr. Terry has not demonstrated an entitlement to relief. Therefore, the Court will resolve the motion without a hearing.

evening, Detective Love, along with other plainclothes police officers, were driving in an unmarked police car and saw Mr. Terry standing outside of a Subaru on a public street. *United States v. Terry*, No. 10-0029, 2010 WL 4639068, at *1 (W.D. Pa. Nov. 8, 2010), *aff'd*, 518 F. App'x 125 (3d Cir. 2013). According to Detective Love, they stopped to investigate because the Subaru and a woman near the driver's side door were blocking them from passing, and the Detective also saw Mr. Terry holding an open alcohol container. *Id.* at *1–2. Detective Love also testified that after the unmarked police vehicle stopped, Mr. Terry made several suspicious movements, including bending inside the passenger's side door of the Subaru and making a shoving motion into his waistband, which Detective Love believed were done to conceal a weapon in his waistband. *Id.* at *2. Mr. Terry denied making any such movements. *Id.* As a result of these movements, Detective Love ordered Mr. Terry to the rear of the vehicle (Mr. Terry complied with that and other commands), performed a pat down of Mr. Terry, and found a gun. *Id.* Mr. Terry then attempted to flee, but Detective Love tackled him, and the other officers assisted in placing Mr. Terry under arrest. *Id.* at *3. At the time of the incident, Mr. Terry was on state parole. ECF No. 38, at 71:23–24. He was later indicted by a federal grand jury for Possession of a Firearm by a Convicted Felon. ECF No. 94, at 4.

At the pre-trial stage, Mr. Terry moved to suppress the firearm, arguing that police obtained it after an unlawful stop and an unlawful search. ECF No. 24. The Court[3] held an evidentiary hearing at which it heard testimony from Detective Love, the arresting officer, as well as three defense witnesses including Mr. Terry himself. ECF No. 38. After hearing all the testimony, the Court denied Mr. Terry's Motion to Suppress, making the requisite findings of fact and conclusions of law. *Terry*, 2010 WL 4639068, at *5. Finding Detective Love's testimony more credible on

---

[3] This case was originally assigned to the Honorable Gary L. Lancaster. It was reassigned to the undersigned due to Judge Lancaster's untimely death.

disputed issues, the Court held that both the initial stop and the subsequent pat down were lawful. *Id.* at *4.

Among the evidence presented at trial was testimony by the arresting officers, notably Detective Love, and most importantly, the firearm seized from Mr. Terry. On December 14, 2011, a jury convicted Mr. Terry of the offense. ECF No. 89. At sentencing, Chief Judge Lancaster found that Mr. Terry was an armed career criminal under the Armed Career Criminal Act ("ACCA"). 18 U.S.C. § 924(e); ECF No. 116, at 4:13–18. Under the Sentencing Guidelines, Mr. Terry's Total Offense Level was 33, and his Criminal History Category was VI.[4] ECF No. 116, at 4:23–25. The advisory Sentencing Guidelines ("Guidelines") recommended a sentence of 235 to 293 months, but the court sentenced Mr. Terry to 180 months in prison, the mandatory minimum statutory sentence after application of the ACCA. *Id.* at 5: 4–7; *id.* at 6:24–7:4; *id.* at 13:18–21; ECF No. 107, at 2.

Mr. Terry appealed his conviction, arguing the district court erred by (1) declining to suppress the firearm as fruit of an unlawful search, and (2) overruling Mr. Terry's objection to a jury instruction on evidence of flight as consciousness of guilt, which the United States requested. *United States v. Terry*, 518 F. App'x 125, 127–29 (3d Cir. 2013). The Third Circuit affirmed Mr. Terry's conviction, *id.* at 129*,* and Mr. Terry did not petition for rehearing en banc, nor did he file a petition for certiorari in the Supreme Court, ECF No. 127, at 2.

On July 28, 2014, Mr. Terry filed this timely *pro se* Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255.[5] ECF No. 127. Specifically, Petitioner argues that his Sixth Amendment right to counsel was violated because his attorney (1) failed to argue the

---

[4] The sentencing court noted that Mr. Terry's criminal history category would have been the same regardless of application of the ACCA. ECF No. 116, at 4:24–5:3.

[5] Mr. Terry's motion is signed and dated July 15, 2014, and affirms that the document was placed in the prison mailing system on that date. ECF No. 127, at 11. In any event, the United States does not contest the timeliness of Mr. Terry's motion. *See* ECF No. 140, at 3.

application of *Alleyne v. United States*, 133 S. Ct. 2151 (2013), ECF No. 127 at 4, (2) failed to effectively plea bargain for Mr. Terry, ECF No. 127 at 5, and (3) failed to adequately cross-examine or argue inconsistencies in the arresting officer's testimony, *id.* at 6–7. Mr. Terry also argues that the Supreme Court's opinion in *Descamps v. United States*, 133 S. Ct. 2276, *reh'g denied*, 134 S. Ct. 41 (2013), created a "new rule of law" that justifies vacating his ACCA sentence because two of the underlying crimes do not qualify as "serious drug offenses." ECF No. 127 at 8. The United States opposes Mr. Terry's Motion in its entirety on substantive grounds. *See generally* ECF No. 140.[6]

## II. LEGAL STANDARD

A federal prisoner may collaterally attack an otherwise final sentence if (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked

---

[6] On May 5, 2015, Mr. Terry filed a Motion to Stay disposition of his Motion to Vacate based on the Supreme Court's request for supplemental briefing in *Johnson v. United States*, No. 13-7120, on the question of whether the residual clause of the ACCA is unconstitutionally vague. ECF No. 148. Mr. Terry argued that if the clause was struck down, he might be entitled to relief because one of his predicate offenses is based on the "violent offense" of aggravated assault. *Id.* at ¶ 5. The United States opposed the Motion, arguing that "the outcome of *Johnson* has no impact" on the Motion to Vacate because Mr. Terry did not challenge the status as a predicate offense of his state conviction for aggravated assault, and because even if he had, that conviction does not fall under the residual clause's definition of a "violent felony" but instead fell within a different provision of that statute. ECF No. 150. In a Memorandum Order dated May 6, 2015, this Court granted Mr. Terry's Motion to Stay without expressing any opinion on the merits of his underlying Motion to Vacate, reasoning that (1) it was at least possible that the Supreme Court's opinion in *Johnson* could provide general guidance on the ACCA which might aid the Court in its disposition of this case, (2) staying the case would likely obviate the need for further motions or proceedings on that issue, and (3) staying the case would not prejudice the interests of the United States. ECF No. 151.

Having now reviewed the Supreme Court's decision in *Johnson v. United States*, No. 13-7120, 2015 WL 2473450 (U.S. June 26, 2015), this Court concludes that *Johnson*'s reasoning is limited in application to the validity of the ACCA residual clause. The Supreme Court's holding that the residual clause is unconstitutionally vague, *id.* at *4, does not affect this Court's disposition of the case at hand, *see id.* at *11 ("Today's decision does not call into question . . . the remainder of the Act's definition of a violent felony."). Notably, Mr. Terry did not challenge the classification of his state conviction for aggravated assault as a predicate offense in his original Motion. Even if he had, however (and indeed, the Court's decision to stay the case was partially based on an assumption that he might have sought to do so had *Johnson* been already decided), the Court agrees with the United States that the underlying charge for aggravated assault in Pennsylvania meets the definition of a "violent felony" not under the residual clause, 18 U.S.C. § 924(e)(2)(B)(ii), but rather under the definition in § 924(e)(2)(B)(i), that the felony "has as an element the use, attempted use, or threatened use of physical force against the person of another," ECF No. 150, at 3–4; 18 Pa.C.S. § 2702(a). The Supreme Court did not in *Johnson* hold that definition unconstitutionally vague, and thus this Court is to treat convictions which meet that definition as ACCA predicate offenses unless and until otherwise directed by our Court of Appeals or the Supreme Court. Any hypothetical challenge Mr. Terry may have made based on *Johnson* is thus of no moment.

jurisdiction to impose the sentence; (3) the sentence was imposed in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A petitioner bears the burden of demonstrating his right to relief under § 2255. *Randle v. United States*, 954 F. Supp. 2d 339, 349 (E.D. Pa. 2013). A district court may deny a § 2255 motion without an evidentiary hearing when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Booth*, 432 F.3d 542, 545–46 (3d Cir. 2005).

## III. DISCUSSION

### A. Ineffective Assistance of Counsel Claims

Petitioners claiming ineffective assistance of counsel "must prove both incompetence and prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Specifically, they must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 687–88, 694 (1984). A court's evaluation of the attorney's actions "must be highly deferential," and those actions must be assessed under the circumstances at the time of representation without the benefit of hindsight. *Id.* at 689. Moreover, the prejudice analysis requires a petitioner to show a "reasonable probability" that the result of the proceeding would have been different, or one that is "sufficient to undermine confidence in the outcome." *Id.* at 694. This requires a court to conclude there is "a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (internal quotation marks and alterations omitted). Counsel's failure to raise a meritless argument cannot constitute ineffective assistance of counsel. *United States v. Bui*, 769 F.3d 831, 835 (3d Cir. 2014). An ineffective assistance of counsel claim fails if a petitioner cannot demonstrate either prong of the test, *Strickland*, 466 U.S. at

700, meaning that the Court does not need to address both deficiency and prejudice—if either element is not satisfied, the analysis may end there, *Booth*, 432 F.3d at 546.

Mr. Terry's claims that his counsel rendered ineffective assistance fail because he has not adequately averred or demonstrated that his counsel's actions fell below an objective standard of reasonableness and that, but for counsel's alleged errors, the result of the proceedings would have been different. *Strickland,* 466 U.S. at 687. The Court will address each of Petitioner's ineffective assistance of counsel claims in turn.[7]

1. *Alleged Failure to Raise the Implications of* Alleyne v. United States

In *Alleyne v. United States*, the Supreme Court held that "any fact that increases the mandatory minimum [sentence for an offense] is an 'element' that must be submitted to the jury" rather than determined by a judge by a preponderance of the evidence at sentencing.[8] 133 S. Ct. 2151, 2155 (2013).

Mr. Terry admits that he "was found guilty by a federal jury [beyond a reasonable doubt] of a § 922(g) offense, being a felon in possession of a firearm." ECF No. 128, at 19. He further explains that his "sentence was enhanced beyond the statutory maximum for the § 922(g) offense, to a mandatory minimum term of 15 years under 18 U.S.C. § 924(e)." *Id.* Mr. Terry argues that because the sentencing judge determined his eligibility for the mandatory minimum sentence under

---

[7] In doing so, the Court notes that although Mr. Terry only identifies the attorney who represented him at trial, sentencing, and on direct appeal in his Motion, *see* ECF No. 127, at 10, several of his arguments actually deal with the performance of counsel at the suppression hearing, who was different than counsel he had later in the case. The issue of which attorney each claim is directed toward is of no moment, especially because the Court concludes that Mr. Terry does not establish deficient performance and prejudice with regard to any one of his arguments.

[8] In *Alleyne*, a jury had convicted the defendant of several crimes including using or carrying a firearm in relation to a crime of violence pursuant to 18 U.S.C. 924(c)(1)(A). 133 S. Ct. at 2155–56. The statute provided for a mandatory minimum sentence of five (5) years or, "if the firearm is brandished," a mandatory minimum sentence of seven (7) years. *Id.* at 2155. The jury had "indicated on the verdict form that Alleyne had '[u]sed or carried a firearm during and in relation to a crime of violence.'" At sentencing, however, the judge adopted the pre-sentence report's recommendation (and correctly determined it could find this fact under the law as it existed at the time) that the defendant "brandished" the firearm for purposes of the statute, triggering the higher mandatory minimum. *Id.* at 2156. That decision set the stage for the Supreme Court's holding.

§ 924(e) (rather than submitting that question to the jury), his sentence was "clearly impermissible under *Alleyne*." *Id.* at 20. This argument essentially boils down to the contention that a court must submit to a jury the question of whether the "previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another" before finding they are predicate offenses and imposing the mandatory minimum term of imprisonment (fifteen (15) years) under the statute. 18 U.S.C. § 924(e).

Although Mr. Terry's argument is not without some facial logic, it fails for two reasons: first, the Third Circuit has explicitly held that "*Alleyne* cannot be applied retroactively to cases on collateral review,"[9] *United States v. Winkelman*, 746 F.3d 134, 136 (3d Cir. 2014)[10]; second, both Supreme Court and Third Circuit precedent are contrary to Mr. Terry's argument on its merits. As the United States points out in its Response with regard to the second point, ECF No. 140, at 5, *Alleyne* did not modify *Almendarez–Torres v. United States,* 523 U.S. 224 (1998), which "held that the fact of a prior conviction is not an element of a crime and therefore may be found by a judge rather than a jury," *Sacksith v. Warden Canaan USP*, 552 F. App'x 108, 109 n.1 (3d Cir. 2014), *cert. denied sub nom. Sacksith v. Ebbert*, 134 S. Ct. 1915 (2014).[11] Citing *Almendarez–Torres* in a

---

[9] Contrary to an argument in his brief that his case was not final under after *Alleyne* was decided, a review of the Third Circuit's docket in Mr. Terry's case shows the Mandate in fact issued prior to the Supreme Court's decision in *Alleyne*. *See* United States Court of Appeals for the Third Circuit Dkt. No. 12-3108.

[10] To his credit, Mr. Terry identified *Winkelman* in his brief and attempted to distinguish the circumstances of his case from it to convince the Court to hold *Alleyne* retroactive as to him. *See* ECF No. 128, at 20–23. He essentially argues that because the Third Circuit "reviewed [the Winkelman petitioners'] pleading through the lens of authorization for filing second or successive § 2255 [motions]," the Third Circuit rejected the petitions based on a higher bar than that which this Court should use to review Mr. Terry's *first* habeas petition. *Id.* at 20–21. While it is true that successive petitions are treated differently from initial petitions, the Third Circuit made no distinction in its opinion between first and successive collateral attacks; instead, the court simply held that "*Alleyne* cannot be applied retroactively to cases on collateral review," without distinguishing the numerical rank of the petition. *Winkelman*, 746 F.3d at 136. That holding conclusively binds this Court on the matter. Even if it did not, Petitioner's argument would fail for the reasons set forth in further detail herein.

[11] The Supreme Court's exact language in this regard came when describing *Apprendi v. New Jersey*, 530 U.S. 466 (2000), as holding "that any 'facts that increase the prescribed range of penalties to which a criminal defendant is

7

footnote, the Supreme Court remarked only that the parties did not raise the "vitality" of that decision (this Court notes that *Almendarez–Torres* was decided 5-4) and that the Court would "not revisit it for purposes of [its] decision." *Alleyne*, 133 S. Ct. at 2160 n.1.

Even though this footnote may not amount to a ringing endorsement of *Almendarez– Torres*'s continued vitality, our Court of Appeals has concluded in both published and unpublished opinions that the case remains binding and determinative in cases similar to this one. *See United States v. Blair*, 734 F.3d 218, 227 (3d Cir. 2013), *cert. denied*, 135 S. Ct. 49 (2014), *reh'g denied*, 135 S. Ct. 743 (2014) ("*Almendarez–Torres* has not been narrowed and remains the law."); *Sacksith*, 552 F. App'x at 109 n.1 ("Contrary to Sacksmith's contention, the Supreme Court's decision in *Alleyne* did not undermine *Almendarez–Torres* in any way.").

Indeed, the court in *Blair* rejected a challenge somewhat similar to Mr. Terry's: Mr. Blair had contended that although the sentencing court could take into account his convictions themselves for purposes of the ACCA, the court improperly "looked at the non-elemental facts of date, location, and victim to determine that the felonies were committed on different occasions."[12] *Blair*, 734 F.3d at 227. Concluding that such argument lacked merit, our Court of Appeals held that the district court properly considered the documents relating to Mr. Blair's prior convictions in concluding that he committed the crimes on occasions different from one another within the meaning of the ACCA. *Id.* "*Descamps* and *Alleyne* do nothing to restrict the established exception under *Almendarez–Torres* that allows judges to consider prior convictions. When the pertinent

---

exposed' are elements of the crime." *Alleyne*, 133 S. Ct. at 2160 (further internal quotation marks and citation omitted). In a footnote, the Court explained: "In *Almendarez–Torres v. United States* . . . we recognized a narrow exception to this general rule for the fact of a prior conviction. Because the parties do not contest that decision's vitality, we do not revisit it for purposes of our decision today." *Id.* at 2160 n.1.

[12] This was important because the "ACCA's mandatory minimum sentence of 15 years becomes applicable when the defendant 'has three previous convictions . . . for a violent felony or a serious drug offense, or both, *committed on occasions different from one another* . . . .'" *Blair*, 734 F.3d 218, 226 (quoting 18 U.S.C. § 924(e)(1) (emphasis added)).

documents show, as they do in this case, that the prior convictions are for separate crimes against separate victims at separate times, *Alleyne* does not somehow muddy the record and convert the separateness issue into a jury question." *Id.* Just as courts may consider the documents related to the underlying convictions to establish that the previous conviction were "committed on occasions different from one another" for purposes of the ACCA, they may also recognize that the underlying convictions qualify as "violent felon[ies] or [] serious drug offense[s], or both." 18 U.S.C. § 924(e)(1); *see Blair*, 734 F.3d at 226–29 (citing many cases with similar holdings, including *United States v. Hendrix*, 509 F.3d 362, 376 (7th Cir. 2007), which stated that "the district court's determination from the PSR that [the defendant] had three previous convictions to satisfy the Armed Career Criminal Act is not impermissible factfinding, and [the defendant's] sentence does not violate the Sixth Amendment").

What this all means is that the sentencing court in Mr. Terry's case properly considered his three (3) qualifying convictions to find that he was an armed career criminal under the ACCA and that recognizing the fact of those prior convictions was a sentencing factor, not an element of the offense which required its submission to a jury under *Alleyne*. Mr. Terry's claim for ineffective assistance of counsel on this ground therefore must fail: first, not raising a meritless claim on appeal is not objectively deficient performance,[13] *see Bui*, 769 F.3d at 835 (quoting *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)) ("'T]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.'"); second, even assuming any failure of Mr. Terry's counsel to raise this case on appeal could constitute deficient

---

[13] It is of course also plainly evident from the record that, to the extent Mr. Terry argues his counsel should have raised *Alleyne* at his sentencing, that contention also fails because Mr. Terry was in fact sentenced on June 13, 2012—over a year before *Alleyne* was decided. *See Monac v. United States*, No. 06-489, 2006 WL 2261616, at *1 (W.D. Pa. Aug. 7, 2006) ("The courts are uniform that counsel will not be held ineffective for failing to predict future developments in the law.") (collecting cases); *compare* ECF No. 106 (Minute Entry for Sentencing held on June 13, 2012), *with Alleyne*, 133 S. Ct. at 2151 ("Decided June 17, 2013").

performance, Mr. Terry did not suffer prejudice because *Alleyne* would not have changed the result of those proceedings, *Strickland*, 466 U.S. at 694.

## 2. *Alleged Failure to Negotiate a Plea Deal*

As the United States candidly acknowledges, ECF No. 140, at 7, the Supreme Court has held, and recently reaffirmed, that effective assistance claims may be asserted based on counsel's performance during the plea-bargaining process, *Lafler v. Cooper*, 132 S. Ct. 1376 (2012); *Missouri v. Frye*, 132 S. Ct. 1399 (2012).[14]  Particularly in the plea context at issue, to prevail, Mr. Terry must demonstrate defective performance on his attorney's part in getting him a plea deal in the first instance that would have been better for him than how actual events unfolded (*Strickland* Prong 1), *Bui*, 769 F.3d at 835, and must also show a reasonable probability that he would have accepted such a plea offer made if he received effective assistance of counsel (modified *Strickland* Prong 2 in the plea context), *Frye*, 132 S. Ct. at 1409.[15]

Mr. Terry contends that "[p]rior to, and after the conclusion of his Motion to Suppress Evidence hearing, Petitioner's defense counsel should have negotiated a favorable plea deal for Petitioner."[16]  ECF No. 128, at 26–27.  He goes on to argue that "[t]he government's borderline

---

[14] In *Lafler*, a defendant's trial counsel provided inaccurate legal advice on whether to accept a plea offer, which resulted in the defendant taking his case to trial and receiving a much higher sentence.  In *Frye*, the defendant's trial counsel failed to communicate a plea offer to his client.

[15] In this type of situation, the Supreme Court more fully explained the prejudice prong by stating:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Id.* (citation omitted).

[16] At a different point, Mr. Terry frames this argument as "[d]efense counsel's failure to ensure that Petitioner was offered a Rule 11(c)(1)(C) binding agreement."  ECF No. 128, at 31.

evidence (upon which the entire indictment rested) placed defense counsel in a prime position to negotiate a favorable Rule 11(c)(1)(C) binding plea agreement for Petitioner." *Id.* at 27. Specifically, Mr. Terry contends that "considering: (1) the government's arguably thin evidence in light of the [*Terry*] stop violation and the inconsistent testimony of the arresting officers; and (2) the severe penalty . . . which petitioner faced under the ACCA for [the] non-violent offense of merely possessing a weapon," his defense counsel provided ineffective assistance when he did "not structure a Rule 11(c)(1)(C) agreement as a resolution to this matter." *Id.* at 31.

The Court concludes that notwithstanding the Supreme Court's recent opinions on the critical importance of effective assistance of counsel at the plea bargaining stage, this argument does not support relief here. Simply put, counsel cannot be ineffective for failing to negotiate a plea if there was no plea offer made by the United States to be negotiated. A plea offer is often a condition precedent to negotiation. As the Supreme Court has acknowledged, "[i]t is, of course, true that defendants have no right to be offered a plea nor a federal right that the judge accept it." *Lafler*, 132 S. Ct. at 1387 (internal quotation marks, citations, and alterations omitted); *Frye*, 132 S. Ct. at 1410. Where Mr. Terry does not contend that he even asked his attorney about attempting to solicit a plea offer, and separately and more importantly, when the record does not indicate that the United States made any plea offer (formal or otherwise[17]), there is no basis for this Court to find deficient lawyer performance or prejudice. *See McClain v. United States*, No. 12-2205, 2013 WL 1163562, at *4 (D.N.J. Mar. 19, 2013) ("Neither the Sixth Amendment or any relevant case law sets

---

[17] Indeed, there is even a question as to whether informal negotiations would be sufficient to make out a claim of ineffective assistance. *See Ramirez v. United States*, 751 F.3d 604, 608 (8th Cir. 2014), *reh'g denied* (July 11, 2014) ("Here, Ramirez received at most an informal plea offer—one that expressly contained no promises or assurances. He simply has not shown that a reasonable probability existed that the government would have extended a plea offer." (footnote omitted)); *Merzbacher v. Shearin*, 706 F.3d 356, 370 (4th Cir. 2013) ("The lack of definition in the plea offer makes it substantially harder to determine it likely that a plea acceptable to [the defendant] would have been entered without the prosecution canceling it or the trial court refusing to accept it." (internal quotation marks, citation, and footnote omitted)), *cert. denied,* 134 S. Ct. 71 (2013).

forth an obligation for defense counsel to *seek* a plea offer or to counsel his/her client of the benefits and obligations of a *hypothetical* offer.").

Mr. Terry's argument in this instance is "little more than an invitation for the Court to make speculation-fueled inferential leaps." *Atkins v. Zenk*, 667 F.3d 939, 946 (7th Cir. 2012) (finding the defendant's chain of inferences too attenuated to establish prejudice under *Strickland*). For Mr. Terry's argument to succeed, the following things, at a minimum, would all need to be true: (1) the United States was willing to negotiate a plea deal[18]; (2) the United States offered a plea deal[19]; (3) Mr. Terry, with the advice of his counsel, determined it was in his interest to accept that specific plea deal[20]; and (4) the sentencing judge then would have accepted the plea agreement.[21] The Court simply cannot engage in such judicial hopscotch based on these purely speculative arguments. *See also United States v. Gonzalez-Rivera*, 217 F. App'x 166, 170 (3d Cir. 2007) (holding a defendant's argument "that he would have accepted a plea agreement and that there [was a] reasonable probability that his sentence would have been more favorable had [his counsel] pursued a plea agreement" was "far too speculative" to show prejudice when the defendant did not point to specific

---

[18] Although the United States did not specifically deny that plea negotiations took place in this case, it did point out that "[t]he government, not defense counsel, controls whether it offers a plea agreement and under what terms." ECF No. 140, at 6.

[19] And according to Mr. Terry, that plea would be in the form of a Rule 11(c)(1)(C) agreement for a sentence of a term of imprisonment of seven and a half years, *i.e.*, one half of the statutorily-mandated minimum sentence. ECF No. 128, at 31.

[20] Which the United Sates points out is belied by the record, as Mr. Terry stated at his sentencing:

> Any time I felt like I was wrong, I took a plea. And I hope the Court don't take no offense to me taking my court case to trial. I just felt like if I was going to go to jail, it wasn't going to be on a lie.

ECF No. 140, at 7 (quoting ECF No. 116, at 8). That Mr. Terry would not have accepted a plea, even if offered, is a fair inference in light of these remarks.

[21] A Rule 11(c)(1)(C) plea agreement is as to a specific sentence. If accepted, the Court is obligated to impose that sentence. Thus, the extra hypothetical step in Mr. Terry's inferential string is that Judge Lancaster would have agreed to the proposed sentence and accepted the hypothetical plea agreement.

benefit he would have received for his plea, and when the evidence contradicted his willingness to plead guilty).[22]

### 3. *Alleged Failure to Effectively Cross Examine and Argue Inconsistencies in the Arresting Officer's Testimony*

Mr. Terry also asserts that his conviction should be vacated because his attorney failed to expose and argue inconsistencies and omissions in Detective Love's testimony at both the suppression hearing and at trial,[23] specifically highlighting that (1) "Detective Love never mentioned Petitioner reaching into the vehicle and retrieving anything . . . [a]nd when confronted with this fact his reply was that he doesn't give every minute movement that was made in his police report," (2) "Detective Love's testimony pertaining to Petitioner turning his back towards him repeatedly differs," and (3) Detective Love's testimony changed between the suppression hearing and trial, most prominently with regard to whether he could see into the vehicle (and thus see Petitioner take anything out of it) or not. ECF No. 128, at 36–37. Mr. Terry also appears to take

---

[22] The Court will also address (only out of an abundance of caution) the Third Circuit's opinion in *United States v. Booth*, 432 F.3d 542 (3d Cir. 2005). In *Booth*, our Court of Appeals held that the defendant was entitled to an evidentiary hearing because counsel's alleged failure to inform the defendant that he could have entered an open plea to both charges could have potentially met the deficiency and prejudice prongs of the ineffective assistance of counsel test. *Id.* at 550. *Booth* is distinguishable from Mr. Terry's case in several ways, most notably because in *Booth*, the Third Circuit's holding was based on the fact that counsel's failure to inform the defendant about the option of entering an open plea resulted in the defendant's ignorance of a unilateral action he could have taken (entering an open guilty plea), which would have resulted in a significant reduction at sentencing. *Id.* at 547–49. In contrast, Mr. Terry's sentence was the mandatory minimum under the ACCA. 18 U.S.C. § 924(e)(1). To receive a sentence below that statutory minimum, Mr. Terry would have needed the government's consent and approval to a plea agreement coupled with a motion under Section 5K1.1 of the Sentencing Guidelines—decisions which would be in the sole and exclusive discretion of the United States. *See* 18 U.S.C. § 3553(e) (Court only has authority to impose a sentence below a statutory minimum "[u]pon motion of the Government" based on substantial assistance in prosecuting another person). Because of this fundamental difference between *Booth* and Mr. Terry's case (as well as other distinguishing factors such as the specificity of the petition with regard to the alleged deficiency, that Mr. Terry did not, in his own estimation, face overwhelming evidence as the defendant in *Booth* appeared to, and that Mr. Terry's statement at sentencing can in fact be read to imply that he would not have pled guilty under any circumstances because he did not feel he was wrong in this instance, *see* ECF No. 116, at 8:16–22), the Court concludes that Mr. Terry's Motion does not show even the potential for the relief that the Third Circuit recognized in *Booth*. An evidentiary hearing is therefore not warranted.

[23] In this regard, Mr. Terry advances a plethora of arguments containing alleged testimonial inconsistencies and omissions that he believes his counsel should have capitalized on during the suppression hearing and at trial. However, his quarrel seems to be more with the Judge who found Detective Love credible despite any testimonial issues and denied Mr. Terry's suppression motion in reliance on that testimony. Mr. Terry does not advance any matters which make or would have made that credibility assessment implausible.

issue with (4) his counsel's failure to challenge the characterization of the neighborhood in which the police arrested Mr. Terry as a "high crime" area. *Id.* at 37–38.[24]

The United States responds by arguing that this claim is essentially an attempt to relitigate the issue of whether reasonable suspicion existed to justify the initial stop, which the trial court found at the suppression hearing, a conclusion the Third Circuit later affirmed. ECF No. 140, at 7–9. As to the ineffective assistance inquiry, the United States argues that Mr. Terry cannot show that he was prejudiced by any failures of his attorney to effectively cross examine the arresting officer or to make arguments about inconsistencies in the officer's testimony at either the suppression hearing or at trial. *Id.* at 8–9. The United States points out that the trial court was in a much better position to determine whether the testimony was credible, and that the Third Circuit left those determinations intact when it affirmed Mr. Terry's conviction. *Id.*

In reviewing his brief, it does appear that Petitioner is attempting to relitigate whether his suppression motion should have been granted, as he spends at least the first several pages of his argument pointing to perceived deficiencies in the trial court's decision not to suppress. ECF No. 128, at 32–35.[25] Such an attempt is impermissible except where the allegations support a claim for

---

[24] Mr. Terry also takes issue with the "insufficient fact" of "the time of night when the stop occurred." *Id.* at 38. While he admits the stop took place "just before midnight," Mr. Terry argues that he was not "loitering on some street corner with an open bottle of some alcoholic beverage," but was merely "standing just out front of his place of residence." *Id.* While the Court appreciates Mr. Terry's point—that in his estimation the circumstances were not suspicious—that is not the test, and the police would not have known he was standing in front of his own home when they pulled up. It was the middle of the night, and, in any event, the Court is not aware of a legal principle which distinguishes between violations of open container laws when one is on the street outside of one's own home as opposed to on a different public street.

[25] A sampling of Mr. Terry's arguments that speak directly to the suppression issue rather than in support of an ineffective assistance argument include: "[T]he Court gave considerable deference to Detective Love's version of events, yet failed to be objective to Detective Love's responses (or lack thereof) toward the allegations that he made," ECF No. 128, at 32; "Detective Love's conduct is as close to a stop and frisk as it gets, and his reaction to these alleged movements belie that he was concerned for his safety at all," *id.* at 35; "because Detective Love's own actions clearly prove he did not feel threatened in any capacity, only two questions remains [sic]: (1) Why did Detective Love perform the Terry search of Petitioner; and (2) was that search administered within the confines of the Fourth Amendment?," *id.* at 40. This Court will not answer these questions, as they have already been addressed both by the trial court and by our Court of Appeals on direct review. *See Travillion*, 759 F.3d at 288 (3d Cir. 2014) ("While issues resolved in a prior direct appeal will not be reviewed again by way of a § 2255 motion, they may, however, be used to support a claim for

---

ineffective assistance of counsel. *See United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014). Since Mr. Terry does reach that ground set forth in his Petition, albeit only intermittently throughout his argument, the Court will address those contentions only insofar as they speak to the ineffective assistance claim.

The Court first notes that this is not a case in which counsel failed to move to suppress, a situation which would present a different possible indication of deficient performance. *See Thomas v. Varner*, 428 F.3d 491, 500–02 (3d Cir. 2005) (holding *Strickland*'s deficiency prong satisfied when a central witness made a questionable identification of the defendant at a trial with little other evidence and counsel neither objected nor moved to suppress because he erroneously believed doing so was improper). More to the point on the deficiency prong, the record in this case belies at least the first, second, and fourth issues Mr. Terry raises as failures by his attorney to point out issues with Detective Love's testimony. In fact, it was Mr. Terry's attorney who drew out these issues on cross-examination during the suppression hearing—while pursuing the completely reasonable strategy of attempting to undermine a witness's credibility. *See* ECF No. 38, at 30:7–33:25 (cross-examination pertaining to omission of detail in the police report and differing testimony before magistrate judge); *id.* at 18:22–21:18 (cross-examination pertaining to whether the arrest location was actually in a high crime neighborhood).[26] Mr. Terry's claim as to those arguments, then, is essentially that, because his attorney did not win those arguments (because the court denied the motion to suppress), counsel was ineffective. To conclude as much would be to

---

ineffectiveness." (internal citation and footnote omitted)); *United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007) ("[W]e have held that section 2255 may not be employed to relitigate questions which were raised and considered on direct appeal." (internal quotation marks and citation omitted)).

[26] In his brief, Mr. Terry also quotes Detective Love's testimony at the suppression hearing that his view of Mr. Terry was "a sideways to a little bit of a back view" and Detective Love's testimony from trial that "it was a back sideways view, I saw a lot of his back," arguing that the latter is "[a] complete contradiction of [Detective Love's] original testimony." ECF No. 128, at 36–37. The Court agrees with the United States that this testimony is easily reconcilable, and is otherwise insufficient to undermine confidence in the outcome of the proceedings, as would be required to grant relief under *Strickland*. *See* ECF No. 140, at 9.

say that every attorney who has ever lost an argument (*i.e.*, every attorney), was thereby providing ineffective assistance of counsel in violation of the Sixth Amendment. Such accusations simply do not withstand scrutiny and must be rejected.

Then, with regard to the third issue raised, it was Mr. Terry's own attorney who elicited the alleged contradiction during trial. *See* ECF No. 147, at 75:24–76:7 (cross-examination regarding whether Detective Love could see into the vehicle, to which he answered he could not).[27] Whether or not counsel could have harped on that contradiction more during the course of trial, any alleged failure to do so simply does not render his performance deficient under *Strickland*. After all, it was defense counsel who in fact elicited the alleged contradictions both at the suppression hearing and at trial, and the Court cannot conclude that their performance in these regards was deficient.

Mr. Terry's arguments about his trial counsel's alleged failure to point out and argue inconsistencies between Detective Love's suppression hearing testimony and his testimony at trial are also without merit because Mr. Terry fails to satisfy *Strickland*'s second prong. For instance, even assuming that Mr. Terry's attorney at trial did not cross examine Detective Love and argue inconsistencies in his testimony to the jury such that his performance was constitutionally deficient,[28] it is safe to say that the suppression issue was pretty much the whole ballgame. This is not a case in which the firearm was only loosely connected to the Petitioner (*e.g.*, found in his vicinity, under a seat in his car, etc.), but was in fact found on his person. Indeed, not one, not two, but three police detectives testified to that fact during trial. ECF No. 147, at 38:18–22; *id.* at 39:3–

---

[27] The Court would note that the Trial Transcript states that the relevant questions were asked by counsel for the United States. ECF No. 147, at 75:23. However, it is clear from the context of the transcript that this is a typographical error, as the questions both before and after are cross-examination, and after the conclusion the transcript then indicates that defense counsel stated, "That's all I have." *Id.* at 81:19.

[28] Which appears to also be belied by the record. *See, e.g.*, ECF No. 147, at 52:5–81:19 (cross-examination of Detective Love); ECF No. 146, at 28:15–18, 30:25–32:22, 33:13–34:20, 37:22–38:8 (closing argument pointing out various inconsistencies in testimony and questioning the credibility of the officers).

4; *id.* at 87:10–11; *id.* at 88:23–24; *id.* at 126:4–5.[29]   Whether he had the gun on his person throughout the entire encounter with police or whether he armed himself after seeing them pull up makes no difference.   This all means that once the trial court denied the motion to suppress, and said that the gun that was found on Mr. Terry's person was admissible at trial, not even the most stellar attorney's cross-examination and closing argument would have created "a substantial, not just conceivable, likelihood of a different result" at trial.   *Cullen*, 131 S. Ct. at 1403 (internal quotation marks and citations omitted).   After the initial stop and search was found lawful,[30] the evidence at trial undeniably demonstrated that Mr. Terry's conduct met the elements of the charged offense: (1) he had previously been convicted of a felony; (2) he knowingly possessed a firearm; and (3) the possession was in or affected interstate commerce.   *See* 18 U.S.C. § 922(g)(1); ECF No. 146, at 17:5–14.   Because Mr. Terry cannot show prejudice based on any alleged deficiencies by trial counsel, his claim for ineffective assistance of counsel on this ground also fails.

### B.   Review of ACCA Application in Light of *Descamps v. United States*

Lastly, Mr. Terry argues that this Court should review his sentence, particularly the ACCA's application in his case, because of the Supreme Court's decision in *Descamps v. United States*, 133 S. Ct. 2276, *reh'g denied*, 134 S. Ct. 41 (2013).[31]   He contends that *Descamps* allows this Court to

---

[29] And the Petitioner admitted to possessing the weapon during the Suppression Hearing, ECF No. 38, at 66:6–11, which likely prevented him from taking the stand at trial to contradict that or other facts.

[30] A finding which was challenged and affirmed on direct appeal.  *See Terry*, 518 F. App'x at 127–29.

[31] Assessing this argument requires some further explanation of the ACCA's application.   The ACCA provides for a fifteen (15) year (180-month) mandatory minimum sentence for a defendant convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) who also "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another."  18 U.S.C. § 924(e)(1).   "Violent felony" and "serious drug offense" are both defined in the statute, § 942(e)(2), and courts seeking to determine whether a past conviction qualifies as an ACCA predicate typically use the "categorical approach," meaning that they assess whether the elements of the prior conviction meets the definition of the crime as commonly understood—without reviewing the "particular facts underlying those convictions."  *Descamps*, 133 S. Ct. at 2283.   As the Supreme Court has stated, "[t]he prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense."  *Id.* at 2281.   When a statute includes alternative elements of a crime, however (for example, if a burglary statute prohibits "entry into a building *or* an automobile"), it is "divisible" and courts may employ the "modified categorical approach" to determine "which alternative formed the basis of the

vacate his sentence and remand for resentencing without the ACCA's application because his "two prior conviction [sic] under Pennsylvania [S]tate [C]ode Section 780-113(a)(30) for controlled substance offenses do not (under [*Descamps*]) qualify as 'serious drug offenses' for [ACCA] purposes." ECF No. 128, at 41–42. Because Pennsylvania lists substances which are not included on federal controlled substances schedules, Mr. Terry argues the Pennsylvania statute under which he was convicted is overbroad, this statute may not serve as the basis for a predicate offense under the ACCA.[32] *Id.* at 42.

The United States counters that each of the prior convictions relied upon for the ACCA enhancement remain viable ACCA predicates. ECF No. 140, at 10–12. The United States argues that although the Pennsylvania statute at issue does in fact criminalize "the distribution of a slightly broader range of drugs than does the federal controlled substances schedule," the Third Circuit has held that the statute is divisible, citing *United States v. Abbott*, 748 F.3d 154 (3d Cir. 2014), meaning courts may "employ the modified categorical approach to determine whether the defendant was convicted of a drug crime involving a substance criminalized under the federal code," ECF No. 140, at 11–12. Because the Information filed by the United States as to each of Mr. Terry's underlying convictions specifically states that the drug at issue was heroin, the United States argues, they qualify as serious drug offenses under the ACCA. *Id.* at 11.

---

[32] As an initial matter, whether the Court should even consider this argument is uncertain, as the Third Circuit has not held that *Descamps* applies retroactively to cases on collateral review. *See United States v. Burton*, No. 99-109, 2014 WL 7369833, at *4 (E.D. Pa. Dec. 29, 2014). However, since Mr. Terry raises the argument in his brief and the Third Circuit has not yet definitively ruled one way or the other, the Court will assume without deciding that *Descamps* could be applied retroactively on collateral attacks. Even with that assumption, Mr. Terry's argument cannot succeed.

defendant's prior conviction." *Id.* That approach allows courts to consider "a limited class of documents, such as indictments and jury instructions" from which it can learn which alternative element the defendant violated. *Id.* Then, courts use that element (along with the others of the offense) to determine whether the crime is an ACCA predicate. *Id.* In *Descamps*, the Supreme Court held that courts may not apply the modified categorical approach to determine whether a prior conviction was for a violent felony under the ACCA when the crime contains a single, indivisible set of elements, as opposed to alternative elements that make the statute divisible. *Id.* at 2281–82.

The sentencing court applied the ACCA enhancement in Mr. Terry's case based on his "three separate convictions for aggravated assault, delivery of controlled substance, [and] possession with the intent to deliver."[33] ECF No. 116, at 4:20–22. The applicable statute for the drug convictions prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act." 35 Pa.C.S. § 780-113(a)(30). The ACCA defines a "serious drug offense" as:

> an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law[.]

18 U.S.C. § 924(e)(2)(A)(ii).

Mr. Terry explicitly concedes that our Court of Appeals "rejected the argument that a conviction under Pennsylvania felony drug statute, 35 Pa.C.S. § 780-113(a)(30), is not a qualifying conviction under the [A]rmed [C]areer [C]riminal Act." ECF No. 128, at 47–48. However, he goes on to request that the Court not dispose of his Motion until after a "petition for rehearing [in *Abbott*] has been resolved." *Id.* at 48. A review of the Third Circuit docket shows that no Petition for Rehearing has been filed in *Abbott*. *See* United States Court of Appeals for the Third Circuit Dkt. No. 13-2216. Moreover, the Third Circuit has recently applied *Abbott* in a non-precedential opinions. *See United States v. Edmonds*, __ F. App'x __, No. 14-2695, 2015 WL 1680613, at *3 (3d Cir. Apr. 15, 2015) ("Edmonds also contends the District Court erred in concluding that his prior convictions for possession with intent to deliver a controlled substance under [35 Pa.C.S. §

---

[33] The enhancement was thus applied based on three prior convictions—two of which were drug offenses, and one of which constituted a "crime of violence." As explained in Note 6, *supra*, Mr. Terry did not contest the categorization of his conviction for aggravated assault as a predicate offense, but even if he had done so under the Supreme Court's recent decision in *Johnson v. United States*, No. 13-7120, 2015 WL 2473450 (U.S. June 26, 2015), his argument would fail because his conviction for aggravated assault falls under the definition of violent felony in 18 U.S.C. § 924(e)(2)(B)(i) rather than the residual clause set out in § 924(e)(2)(B)(ii) and challenged in *Johnson*. The Supreme Court did not hold that provision of the statute unconstitutionally vague; the Court therefore rejects any hypothetical challenge Mr. Terry would pose with regard to that conviction's status as an ACCA predicate offense.

780–113(a)(30)] qualified as predicate 'serious drug offenses' under the ACCA. However, as Edmonds acknowledges, this argument is squarely foreclosed by our recent precedential decision in *United States v. Abbott*.").[34]   The Court therefore concludes that *Abbott* stands as the law in this Circuit and will apply it to resolve Mr. Terry's Motion.

Our Court of Appeals held in *Abbott* that the exact statute at issue in this case is divisible, meaning that courts may apply the modified categorical approach (without running afoul of *Descamps*) to determine whether a specific conviction qualifies as an ACCA predicate.  748 F.3d at 158–59.  The court reasoned that the statute's specification of different punishments for different types of controlled substances indicates that each type of drug is an alternative element which courts can weigh using the modified categorical approach.  *Id.* at 159.  The Court of Appeals then affirmed the District Court's application of that method by reviewing "the charging document—the Bill of Information," which indicated the relevant drug at issue in that case was crack cocaine.  *Id.* Noting that the punishment for possession with intent to distribute cocaine under Pennsylvania law carries a maximum term of imprisonment of ten (10) years, and that cocaine is also a federal controlled substance, the court concluded the petitioner's prior conviction was a proper ACCA predicate.  *Id.* at 159–60 (citing 35 Pa.C.S. § 780–113(f)(1.1)); 21 U.S.C. §§ 802(6), 812).

Although it is not readily apparent from the transcript what method the sentencing court used to find Mr. Terry eligible for the ACCA enhancement, a look at the charging documents (which is permissible under the modified categorical approach) in Mr. Terry's state court cases, ECF Nos. 140-1; 140-2, conclusively shows that the drug in Mr. Terry's prior convictions was heroin—a drug also criminalized under the Controlled Substances Act.  21 U.S.C. §§ 802(6), 812. In addition, the Pennsylvania statute at issue carries a maximum penalty of fifteen (15) years when

---

[34] Our Court of Appeals further stated in *Edmonds* that, as a three-judge panel, it would not address whether *Abbott* was wrongly decided.  *Id.*

heroin is the relevant drug. 35 Pa.C.S. §§ 780–113(f)(1), 780-104. Therefore, under *Abbott*, the sentencing court properly counted these convictions as ACCA predicates to determine that Mr. Terry was eligible for the enhancement. Because *Descamps* did not alter this analysis, as the Third Circuit explicitly held in a precedential opinion, Mr. Terry's argument in this regard must fail.

### C.  Certificate of Appealability

To pursue an appeal from a final order in a §2255 proceeding, a petitioner must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability "may issue only upon 'a substantial showing of the denial of a constitutional right.'" *Michael v. Horn*, 459 F.3d 411, 418 n.9 (3d Cir. 2006) (quoting 28 U.S.C. § 2253(c)(2)). When the denial of a § 2255 motion is based on the merits of the claims, the petitioner is required to show "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). This showing could be made, for instance, when precedent clearly demonstrates that courts have arrived at divergent conclusions based on similar facts. Because Mr. Terry has not made a substantial showing of the denial of a constitutional right, and because the Court finds that reasonable jurists would not debate the denial of his motion, the Court declines to issue a certificate of appealability.

## IV.    CONCLUSION

For the reasons set forth alone, Petitioner Andrew Terry's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, ECF No. 127, will be denied. A separate Order consistent with this Opinion shall issue this date.

s/ Mark R. Hornak
Mark R. Hornak
United States District Judge

Dated: July 14, 2015
cc:  All counsel of record